Steven L. Yarmy, Esq.
Nevada Bar No. 8733
520 S. 6th Street
Las Vegas, Nevada 89101
(702) 967-0442
(702) 586-3690 FAX
sly@stevenyarmylaw.com
*Attorney for the Debtors*
*and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

EFREM ROSENFELD and VALERIE
ROSENFELD,

                    Debtor

Case No.: 12-11297-LBR

Chapter 11

**Hearing Date: July 25, 2012**
**Hearing Time: 2:00 PM**

### MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF CREDITORS PURSUANT TO 11 U.S.C. § 506(a), AND REQUEST FOR JUDICIAL NOTICE FOR PROPERTY LOCATED AT 166 East 63rd Street, Unit 20B, New York, New York 10065

Now comes the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") by and through her undersigned attorneys, Steven L. Yarmy, Esq. and files this motion (the "**Motion**"), pursuant to section 506(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Bankruptcy Rules 3012 and 9014 of the Federal Rules of Bankruptcy Procedure to value collateral securing certain residential loans and re-classify lenders claims as unsecured and in support of the Motion state:

### FACTUAL BACKGROUND

1.       On February 3, 2012, the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. The Debtor currently owns seven (7) residential rental properties.

2.      This Property currently has two mortgages and one association lien and several tax liens, as identified on Exhibit A. By this motion, the Debtor seeks to bi-furcate the first lender's claim into secured and unsecured claims based on the market value of the Property as set forth in Exhibit B and the Debtor hereby REQUEST that the this court and all interested parties take JUDICIAL NOTICE of NEW YORK CITY's market valuation[1] of the subject property subject to NEW YORK LAW. Additional copies are available to creditors and parties-in-interest upon request.

***Property 1***

3.      166 East 63rd Street, Unit 20B, New York, New York 10065; Debtor's Rental Property ("Property 1").

4.      On the petition date, the estimated value of Property 1 was $447,277.00, as set forth in *Exhibit A & B*, attached herein and incorporated for reference.

5.      At the time of filing the petition, Property 1 was subject to the following lien(s):

a.   AURORA LOAN SERVICES LLC. ("ALS"), Acct#xxxxx8620, (First Deed of Trust) in an estimated amount of $1,159,233.64. A proof of claim has been filed as POC#9-1.

b.   ALLY BANK, ("AB"), Acct#xxx5369, (Second Mortgage – HELOC) in an estimated amount of $226,164.21. A proof of claim has been filed as POC#27-1

c.   The 166 East 63rd Street Condominium, ("166"), (Junior association lien(s)) in an estimated amount of $55,434.66. A proof of claim has been filed POC#26-1.

d.   Internal Revenue Service. ("IRS"), (Tax Liens) in an estimated amount of $3,000,000.00.

---

[1] **Market Value**
The most probable price that a property should command in a competitive and open market. The Department of Finance uses one of three approaches to value a property: sales, cost, or income. New York State law requires Finance to value cooperative and residential condominium buildings as if they were rental apartment buildings, using the income approach. Finance's value is not based on the sales price of individual co-op or condo units but on an estimate of the rent that would be charged for the units if they were rental apartments. https://a836-propertyportal.nyc.gov/glossary.aspx#Market Value

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF LAW**</u>

**Valuation of Properties under New York Law**

6.      A property valuation by a tax assessor is presumptively valid. A petitioner may overcome that presumption by demonstrating the existence of a valid and credible dispute regarding valuation through the presentation of documentary and testimonial evidence that is based on sound theory and objective data (see *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187-188; *Matter of Century Realty, Inc. v Commissioner of Fin.*, 15 AD3d 652, 653. If the petitioner meets this initial burden, the petitioner must then prove by a preponderance of the evidence that the property was overvalued *(see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d at 188; Matter of Century Realty, Inc. v Commissioner of Fin.,* 15 AD3dat654).

7.      The valuation of condominium properties is largely governed by Real Property Tax Law §581 and Real Property Law §339-y. Both of these provisions direct that a condominium "must be valued for assessment purposes as if it were a rental property" (*Matter of East Medical Center, L.P. v. Assessor of Town of Manlius*, 16 AD3d 1119, 1121 [4th Dept. 2005], *Matter of Greentree At Lynbrook Condominium No. 1 v. Board of Assessors of the Village of Lynbrook*, et al., 81 NY2d 1036 [1993]). Since condominiums are generally not rent producing properties, RPTL §581 [1J [a], asserting a preference for the income capitalization approach to valuation, directs that the value of the unit be fixed "at a sum <u>not exceeding</u> the assessment which would be placed upon such parcel were it not owned or leased on [...] a condominium basis (RPTL §581 [1][a] (emphasis added) ; see also, *Matter of River House - Bronxville v. Hoffman*. 100 AD2d 970, 973 [1984]). However, "[i]n no event shall the aggregate of the assessment of the units plus their common interests exceed the total valuation of the property were the property assessed as a parcel" (RPL §339-y [1][b]).

8.      The substantial evidence standard is a minimal standard. It requires less than "clear and convincing evidence" (Matter of Carriage House Motor Inn v City of Watertown, 136 AD2d 895, and

less than proof by "a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt" (*300 Gramatan Ave. Assocs. v State Div.*, 45 NY2d 176, at 180).

**Valuation Method Used**

9.    The **income approach** is used for income producing properties and would be appropriate this type of property. In fact New York Real Property Tax Law commands such a method.

10.    The cost approach tends to overstate the value of real property and is the least favored method (see, *In the Matter of Saratoga Harness Racing vs. City of Saratoga Springs*, 91 NY2d 639).

11.    The income capitalization method is a valuation technique which measures real estate value in terms of the property's income producing ability. As noted in *The Appraisal of Real Estate*: "Anticipation is fundamental to the income capitalization approach. All income capitalization methods, techniques, and procedures attempt to consider *anticipated future benefits* and estimate their present value." Appraisal Institute, *The Appraisal of Real Estate,* p. 471 (12th ed. 2001) (emphasis added).

12.    Real Property Tax Law § 581 requires that a cooperative be evaluated for assessment purposes in the same fashion as other income producing multi-family properties.

13.    Real Property Tax Law § 581(1) requires that condominiums and cooperatives be assessed without regard to their unique form of ownership. Therefore, the same valuation standards applicable to apartment houses apply to cooperatives. As the State Board of Equalization and Assessment has written: "Section 581 does not disturb this traditional income approach in valuation for taxation purposes of conventional apartment houses or multi-family 'real property occupied for residential purposes on a rental basis', nor does it prohibit use of the cost method. Thus, income and cost remain allowable where appropriate" (7 Op. Counsel SBEA No. 81, at p. 173).

14.    Under the income capitalization method, potential income is based upon fair market rent, representing the prevailing market rent that a property would command assuming it were

available to be rented on the taxable status date. 13-132 Warren's Weed New York Real Property § 132.18.

15.    Because the subject property is an income producing property the income capitalization approach for valuation of the income producing properties is used. Kew Gardens Road Assoc. v Tyburski, 70 NY2d 330, 331. "Under the income capitalization approach, the income stream subject to capitalization consists of the property's economic net operating income, derived by deducting a vacancy and collection loss allowance and appropriate operating expenses from potential gross income." Matter ofSenpike Mall Co. et al. v Assessor of the Town of New Hartford et al, 136 AD2d 19.

**Application of Section 506 of the Bankruptcy Code**

16.    Section 506(a)(1) of the Bankruptcy Code provides that a Chapter 11 debtor may bifurcate a secured lender's claim into an allowed secured claim and an allowed unsecured claim based upon the actual value of the property securing such lender's lien.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

17.    The Supreme Court has recognized that section 506 of the Bankruptcy Code defines the amount of the secured creditor's allowed secured claim and the conditions of his receiving post-petition interest. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988). In United Sav. Ass'n of Texas, the Supreme Court interpreting Section 506(a) of the Bankruptcy Code found that:

In subsection (a) of this provision the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues-since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended. The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral."

See id. (emphasis added) (quoting H.R.Rep. No. 95-595, pp. 181, 356 (1977)).

18.     The Ninth Circuit agrees with this interpretation of section 506 of the Bankruptcy Code. In re Maldonado, 46 B.R. 497, 499 (9th Cir. BAP 1984) (interpreting section 506(a), "a claim 'is a secured claim to the extent of the value of [the] creditor's interests in the estate's interest in the property. The entire claim is not a secured claim. The claim is secured only to the extent of the value of the secured interest.")

19.     In addition, this Bankruptcy Court has found that "an 'allowed secured claim' is a determination generally made under 11 U.S.C. § 506." In re BBT, 11 B.R. 224, 229 (Bankr. D. Nev. 1981). The Bankruptcy Court further stated that, with respect to a claim secured by a lien on property of the estate, "to the extent that the value of the property is less than the amount of the total allowed claim, the claim is unsecured." Id. (emphasis added).

20.     Thus, pursuant to the law of this Circuit, the amount of the allowed secured claim cannot exceed the market value of the property and the remainder of the claim must be treated as an allowed unsecured claim for purposes of the plan. In re Sagewood Manor Associates Ltd. Partnership, 223 B.R. 756, 773 (Bankr. D. Nev. 1998) (holding that the court may confirm a chapter 11 plan over the objection of a class of secured claims if the members of that class are to receive under the plan property of a value equal to the allowed amount of their secured claims, as determined under 11 U.S.C. § 506(a)).

21.     Moreover, the Ninth Circuit Court of Appeals has also found that a wholly unsecured lien holder's claim can be modified and reclassified as a general unsecured claim pursuant to section

506(a) of the Bankruptcy Code. See <u>In re Zimmer</u>, 313 F.3d 1220 (9th Cir. 2002). Specifically, the Court held:

> Section 506(a) divides creditors' claims into 'secured claims' and 'unsecured claims.' Although the conventional interpretation of 'secured' might include any claim in which the creditor has a security interest in the debtor's property, § 506(a) makes clear that the status of a claim depends on the valuation of the property:

> 'An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.'

> 11 U.S.C. § 506(a). To put it more simply, a claim such as a mortgage is not a 'secured claim' to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code 'secured claim' is thus a term of art not every claim that is secured by a lien on property will be considered a 'secured claim.' Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

<u>In re Zimmer</u>, 313 F.3d at 1222 - 23.

22.    Accordingly, because the first mortgages on the Property is under-secured, those lenders claims should be bifurcated into secured and unsecured claims based on the market value of the Property as shown in the Comparable Sales & Market Analysis as set forth in <u>Exhibits A, B.</u>

**New York Law as to Unpaid Common Charges That are Wholly Unsecured and Should be Stripped**

23.    339-z of the Real Property Law which provides in part, as follows:

> "The board of managers, on behalf of the unit owners, shall have a Lien on each unit For the unpaid common charges thereof, together with interest thereon, Prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, and (ii) all sums unpaid on a first mortgage of record or on a subordinate mortgage of record held by the New York job development authority. Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee."(Emphasis supplied.)

24.    Here, what is clear, is the fact a lien for common charges is provided for by section

339-z and that such lien, when effectuated, gains a certain priority. As noted, that section provides that the "board of managers, on behalf of the unit owners, Shall have a lien on each unit for the unpaid common charges thereof . . . Prior to all other liens . . ." *other than* that of a **first mortgagee** or a municipality for realty taxes. (Emphasis supplied). *Washington Federal Sav. and Loan Ass'n v. Schneider*, 408 N.Y.S.2d 588, 95 Misc.2d 924 (N.Y.Sup., 1978).

25.    The lien is not self-executing; to become effective, the Condominium must file a notice of lien in the appropriate recording office. Section 339-aa of the Real Property Law provides, in pertinent part, as follows:

> The lien provided for in the immediately preceding section shall be effective from and after the filing in the office of the recording officer in which the declaration is filed a verified notice of lien . . .; and shall continue in effect until all sums secured thereby, with the interest thereon, shall have been fully paid or until expiration six years from the date of filing, whichever occurs sooner. . . .

26.    Once the condominium files a notice of lien, the lien extends to subsequently accruing, unpaid common charges and accrued interest due up to the time of the sale or conveyance. *Washington Federal Sav. & Loan Ass'n v. Schneider*, 95 Misc.2d 924, 929, 408 N.Y.S.2d 588, 590 (Sup.Ct.Rockland Co.1978); see *In re Raymond*, 12,9 B.R. 354 (Bankr.S.D.N.Y.1991); see also *W. Goldsmith, Practice Commentaries* 553, 576; printed in Book 49, Real Property Law (McKinney's 1989). **The condominium's lien is, however, subordinate to a recorded first mortgage**. *Bankers Trust Co. v. Bd. of Managers of Park 900 Condominium*, 81 N.Y.2d 1033, 1036, 600 N.Y.S.2d 191, 193, 616 N.E.2d 848 (1993) (Emphasis added). Further, the lien does not, at least on its face, extend to attorney's fees pursuant to N.Y.Real Property Law § 339-s (McKinney Supp.1995), may specifically provide otherwise. See, e.g., *In re Mishkin*, 8,5 B.R. 18 (Bankr.S.D.N.Y. 1988).

27.    The plain meaning of the emphasized language unambiguously states that assessment liens are subordinate to purchase money liens. Here, Aurora Loan Services LLC, holds a recorded first mortgage that was used to purchase the property. Accordingly, the property is only worth $447,277.00

according to the Market Value of the New York County Assessors valuation. Thus, THE 166 EAST 63RD STREET CONDOMINIUM's lien should be stripped because it is wholly unsecured.

28.     Questions regarding the interpretation of the terms of a contract provision are questions of law to be decided by the court. *Van Wagner Advertising Corp. v S & M Enterprises*, 67 NY2d 186 (1986).

> "A fundamental tenet of contract law is that agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms, without reference to extrinsic materials outside the four corners of the document [internal quotation marks and citations omitted]."

*Goldman v White Plains Center for Nursing Care, LLC*, 11 NY3d 173, 176 (2008); *MHR Capital Partners LP v Presstek*, 12 NY3d 640 (2009); *Vanship Holdings Limited v Energy Infrastructure Acquisition Corp.*, 65 AD3d 405 (1st Dept 2009).

29.     This is especially true "where... the instrument was negotiated between sophisticated, counseled... people negotiating at arm's length [internal quotation marks and citations omitted]." *TAG 380, LLC v ComMet 380, Inc.*, 10 NY3d 507, 513 (2008); *Logiudice v Logiudice*, 67 AD3d 544 (1st Dept 2009).

> "It is a recognized rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract... without force and effect. An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation [internal quotation marks and citations omitted]."

*Ruttenberg v Davidge Data Systems Corp.,* 215 AD2d 191, 196 (1st Dept 1995).

30.     For this Court to give the Association its requested lien priority "in the absence of clear language as to that effect would undermine the principle of notice embodied in the recordation and registration statutes." *Fed. Nat'l Mortg. Ass'n v. McKesson,* 639 So.2d 78, 79 (Fla.Dist.Ct.App.1994). Accordingly, for all of the reasons set forth above, this Court should concludes that the Association's

assessment lien is subordinate to the Aurora's lien. As the amount owed on the Aurora's lien exceeds the value of the Property, the Association's lien is completely "underwater"—i.e. has no value—and may therefore be "stripped."

*In re Frazer*, 466 B.R. 107, 117 (Bankr. S.D. Tex. 2012).

31.     Finally, the filing of a motion rather than an adversary proceeding to achieve the relief requested herein is appropriate in this Court. See <u>In re Bonsignori</u>, Case No. BKS-08-11830-LBR (D. Nev. June 25, 2008) (approving the stripping off of an unsecured lien by motion); see also <u>In re Robert</u>, 313 B.R. 545 (Bankr. N.D.N.Y. 2004); <u>In re Bennett</u>, 312 B.R. 843 (Bankr. W.D. Ky. 2004); <u>In re King</u>, 290 B.R. 641 (Bankr. C.D. Ill. 2003); <u>In re Millspaugh</u>, 302 B.R. 90 (Bankr. D. Idaho 2003); Dickey v. Ben. Fin. (In re Dickey), 293 B.R. 360 (Bankr. M.D. Pa. 2003); <u>In re Hill</u>, 304 B.R. 800 (Bankr. S.D. Ohio 2003); <u>In re Sadala</u>, 294 B.R. 180 (Bankr. M.D. Fla. 2003); <u>In re Fisher</u>, 289 B.R. 544 (Bankr. W.D.N.Y. 2003); <u>In re Hoskins</u>, 262 B.R. 693 (Bankr. E.D. Mich. 2001); <u>In re Fuller</u>, 255 B.R. 300 (Bankr. W.D. Mich. 2000); and <u>In re Williams</u>, 166 B.R. 615 (Bankr. E.D. Va. 1994).

## **<u>CONCLUSION</u>**

32.     Bankruptcy law is clear, absent sufficient equity in the Property, the first mortgage lender's claim is only partially secured and thus should be bifurcated into secured and unsecured claims as to Property 1, and the wholly unsecured second or lien shall bifurcated into an unsecured claim as to Property 1. The unsecured portions of these claims should receive only their pro rata distribution with other general unsecured creditors through the Debtors Chapter 11 plan.

**WHEREFORE**, Debtor prays that this Court:

Valuate the Property in accordance with the TAX ASSESSORS VALUATION attached hereto;

1      • Bifurcate ALS's, Acct#xxxx8620 (Property 1) into secured and unsecured claims in the

2          respective amounts of $447,277.00 as a secured claim and $711,956.64 as an unsecured claim;

3

4      • Avoid, "strip off", and extinguish the ALLY BANKS wholly unsecured second lien; THE 166

5          EAST 63RD STREET CONDOMINIUM's wholly unsecured association lien, and the IRS's

6          tax lien, (Property 1) pursuant to section 506(a) of the Bankruptcy Code;

7

8      • Reserve the Debtor's right to revalue the properties in connection with confirmation of the

9          plan; and such other relief the Court deems just and proper; and LR 9021 be waived

10    Dated: June 21, 2012

11

12    /s/ Steven L. Yarmy
      Steven L. Yarmy, Esq.
13    Nevada Bar No. 8733
      520 S. 6th Street
14    Las Vegas, Nevada 89101
      (702) 967-0442
15    (702) 586-3690 FAX
      sly@yarmylaw.com
16    *Attorney for the Debtor*
      *and Debtor-in-Possession*
17

18

19

20

21

22

23

24

25

26

27

28

1

2                                    **PROPOSED ORDER**

3

4

5

6

7   Steven L. Yarmy, Esq.
    Nevada Bar No. 8733
8   520 S. 6th Street
    Las Vegas, Nevada 89101
9   (702) 967-0442
    (702) 586-3690 FAX
10  sly@stevenyarmylaw.com
    *Attorney for the Debtors*
11   *and Debtor-in-Possession*

12

13                      **UNITED STATES BANKRUPTCY COURT**

14                              **DISTRICT OF NEVADA**

15

16  In re:                                │  Case No.: 12-11297-LBR

17  EFREM ROSENFELD and VALERIE          │  Chapter 11
    ROSENFELD,
18                                        │  **Hearing Date: July 25, 2012**
                                          │  **Hearing Time: 2:00 PM**
19                Debtor

20

21

22          **ORDER GRANTING MOTION TO VALUE COLLATERAL,
        "STRIP OFF", "CRAM DOWN" AND MODIFY RIGHTS OF LENDER**
23          <u>**166 East 63rd Street, Unit 20B, New York, New York 10065**</u>

24          1.      Upon the motion (the "Motion") of the Debtors in the above captioned proceeding (the

25  "Debtor"), for theirr investment property located at 166 East 63rd Street, Unit 20B, New York, New

26  York 10065; Debtors Rental Property ("Property 1"); is requesting entry of an order to Value

27  Collateral, "Strip Off", "Cram Down" and Modify Rights of ALS's (First Lien on Property 1), and the

28

                                      - 12 -

ALLY BANK'S; THE 166 EAST 63RD STREET CONDOMINIUM's and the IRS's (wholly

unsecured junior liens & tax lien(s)) pursuant to 11 U.S.C. § 506(a) and § 1123 finding that the liens

are wholly unsecured and undersecured;[2] and due notice of the Motion and the hearing of the Motion

having been given to all parties entitled thereto; and a hearing having been held before this Court on

_____, 2012 at 2:00 PM (the "Hearing"), to consider approval of the Motion, at which time

all parties in interest were afforded an opportunity to be heard; and the Court finding that Property 1

has a value of $447,277.00, and because there are no objections to the Motion having been filed; it is

hereby:

      **ORDERED** that the Motion is **GRANTED**; it is further

      **ORDERED** that ALS's secured first lien claim on 166 East 63rd Street, Unit 20B, New York,

New York 10065; Debtors Rental Property ("Property 1") are only partially secured and thus must be

bifurcated into secured and unsecured claims as follows: $447,277.00 and $711,956.64 respectively;

and it is further

      **ORDERED** that Ally Bank's; The 166 East 63rd Street Condominium's and the IRS's secured

junior liens and tax lien claims on Property 1 are "Stripped Off" and shall be treated as a "general

unsecured claim" pursuant to 11 U.S.C. Section 506(a); and it is further

      **ORDERED** that for this Court to give the Association lien priority "in the absence of clear

language as to that effect would undermine the principle of notice embodied in the recordation and

registration statutes." *Fed. Nat'l Mortg. Ass'n v. McKesson,* 639 So.2d 78, 79 (Fla.Dist.Ct.App.1994).

Accordingly, for all of the reasons set forth above, this Court should concludes that the Association's

assessment lien is subordinate to Aurora's lien. As the amount owed on the Aurora's lien exceeds the

value of the Property, the Association's lien is completely "underwater"—i.e. has no value—and may

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

therefore be stripped and treated as general unsecured claim *In re Frazer*, 466 B.R. 107, 117 (Bankr. S.D. Tex. 2012); and it is further

**ORDERED** that the unsecured portions of ALS's, AB's; The 166 East 63rd Street Condominium's and the IRS's claim(s) be reclassified as general unsecured claims to be paid pro rata with other general unsecured creditors through the Debtors Chapter 11 plan; and it is further

**ORDERED** that the above secured creditors' shall retain their respective liens on the real property described herein until such time as the debtors have completed their Chapter 11 Plan and received a discharge of their obligations; and it is further

**ORDERED** that the above secured creditor's rights and/or lien-holder rights in Property 1 respectively are hereby modified as set forth above, and it is further

**ORDERED** that as provided by Fed. R. Bankr. P. 7062, this Order shall be effective and enforceable immediately upon entry; and it is further

**ORDERED** that this Court retains jurisdiction to hear all matters relating to or arising from the entry of this Order.

Respectfully Submitted,

/s/ Steven L. Yarmy
Steven L. Yarmy, Esq.
Nevada Bar No. 8733
520 S. 6th Street
Las Vegas, Nevada 89101
(702) 967-0442
(702) 586-3690 FAX
sly@yarmylaw.com
*Attorney for the Debtors*
 *and Debtor-in-Possession*

**ALTERNATIVE METHOD re: RULE 9021**:

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____ The court waived the requirements of approval under LR 9021.

_____ No Party appeared at the hearing or filed an objection to the motion.

_____ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved or disapproved, or failed to respond to the document]:

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury under the laws of the State of Nevada that the Foregoing is true and correct.

/s/ Chris Craig_____

Paralegal

**EXHIBIT A**

The following describes the Property including the amount of the mortgages and the actual appraised value.

**Address:**

166 East 63rd Street, Unit 20B, New York, New York 10065

**Market Value:**

$100,000.00

| Lien Holder | Priority | Loan No.: | Secured Amt | Unsecured Loan Amt | Est. Loan Amt |
|---|---|---|---|---|---|
| ALS | First | Xxxxx8620 | $447,277.00 | $711,956.64 | $1,159,233.64 |
| ALLY BANK | Second | | 0.00 | $226,164.21 | $226,164.21 |
| THE 166 EAST 63RD STREET CONDOMINIUM | Junior Lien | | 0.00 | $55,434.66 | $55,434.66 |
| IRS | TAX lien | | 0.00 | $3,000,000.00 | $3,000,000.00 |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent on June 21, 2012,

to the following via:

**CM/ECF:**

JEREMY T BERGSTROM on behalf of Creditor WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF PARK PLACE SECURITIES, INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-WCW2
mbergstrom@mileslegal.com

MICHAEL R. BROOKS on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES, INC.
jsallade@brooksbauer.com

MICHAEL W. CHEN on behalf of Creditor AURORA LOAN SERVICES
yvette@ccfirm.com;mrosales@ccfirm.com;rdesimone@ccfirm.com;jcraig@ccfirm.com

CHRISTOPHER M. HUNTER on behalf of Creditor BEAL BANK, S.S.B.
bknotice@mccarthyholthus.com, chunter@mccarthyholthus.com;nvbkcourt@mccarthyholthus.com

CHARLES L KENNON on behalf of Creditor AURORA LOAN SERVICES
ckennon@ccfirm.com

GRACE M. KIM on behalf of Creditor HSBC BANK USA, NATIONAL ASSOCIATION
GKIM@ZIEVELAW.COM

CHRISTOPHER K LEZAK on behalf of Creditor BEAL BANK, S.S.B.
bknotice@mccarthyholthus.com, nvbkcourt@mccarthyholthus.com;clezak@mccarthyholthus.com

MEGAN K. MAYRY MCHENRY on behalf of Creditor BANK OF LAS VEGAS
m.mayry@lvlaw.com, l.finchio@nevlaw.com

ACE C VAN PATTEN on behalf of Creditor GMAC MORTGAGE, LLC
avanpatten@piteduncan.com, ecfnvb@piteduncan.com

GILBERT B, WEISMAN on behalf of Creditor AMERICAN EXPRESS BANK FSB
notices@becket-lee.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

**US MAIL PRIORITY to:**

AURORA BANK, FSB
Attn: Officer, Director, Manager, Agent
PO BOX 1706
Scottsbluff, NE 69363-1706

GMAC Mortgage, LLC
Attn: Officer, Director, Manager, Agent
1100 Virginia Drive
Ft. Washington, PA 19034

The 166 East 63rd Street Condominium
c/o AKAM Associates
260 Madison Avenue
12th Floor
New York, New York 10016

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

/s/ Chris Craig

Paralegal

**EXHIBIT B**